## 416 FOWLER v. UNION COARSE SALT CO.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment affirmed, with costs.

---

ALBERT P. FOWLER, as Administrator with the Will Annexed, etc., of GEORGE F. COMSTOCK, Deceased, Appellant, v. UNION COARSE SALT COMPANY, Respondent.

*Action for money had and received — receipt of the money must be shown — ratification established by accounts stated.*

George F. Comstock, who died in September, 1892, was the treasurer of the Union Coarse Salt Company and of the Western Coarse Salt Company, and was the president of the American Dairy Salt Company. His administrator brought an action for moneys alleged to have been advanced by him to the defendant, the Union Coarse Salt Company, and the latter interposed a counterclaim. Upon the trial of the action it appeared that, on the 14th day of November, 1887,

a bank loaned the defendant $10,399.12, by its check payable "to the order of Geo. F. Comstock, Treas." This check was indorsed by "Geo. F. Comstock, Treas," then by "Geo. F. Comstock, Jr.," who was president of the defendant, and then by "Thomas Molloy, Treas.," who was treasurer of the American Dairy Salt Company, and was then credited by the latter company to the defendant. After that time and up to March 5, 1888, the defendant received from the American Dairy Salt Company $10,551.62, of which amount only $4,655.51 appeared in the account of the treasurer of the defendant, the balance being found in the treasurer's account of the Western Coarse Salt Company.

The defendant, by its counterclaim, first claimed as for money had and received, and separately alleged a conversion of the loan of November 14, 1887, in that, without right, Comstock loaned the money to the American Dairy Salt Company, knowing it to be insolvent and that the corporation failed, and that the money was lost.

Upon an appeal by the plaintiff from a judgment entered upon a decision to the effect that the facts stated constituted a conversion,

*Held*, that, as it was not shown that George F. Comstock personally ever had any of the moneys represented by the check of November 14, 1887, an action for money had and received would not lie;

*Semble*, that, as the books of the defendant showed a settlement of the treasurer's account on February 15, 1892, at which time a balance was due by the treasurer of $151.64, while on February 20, 1893, they showed a balance due him of $5,076.75, the amount which the plaintiff claimed, the silence of the defendant, until the latter date, implied a ratification of the act of the plaintiff or prior authority to him to act as he did;

That, as the books showed that, on or before March 5, 1888, the full amount due by the American Dairy Salt Company had been repaid to the defendant, the latter had not been damaged, and a finding that Comstock had converted the check was erroneous;

That the fact that, by some arrangement, a part of the repayment had been turned over to the Western Coarse Salt Company did not affect the state of the account between the defendant and the American Dairy Salt Company.

APPEAL by the plaintiff, Albert P. Fowler, as administrator with the will annexed, etc., of George F. Comstock, deceased, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Onondaga on the 25th day of February, 1895, upon the decision of the court rendered after a trial at the Onondaga Circuit before the court without a jury.

The American Dairy Salt Company, Limited, the Western Coarse Salt Company and the Union Coarse Salt Company were domestic corporations, organized for the manufacture of salt.

George F. Comstock was the president of the American Dairy Salt Company, and was the principal owner in all three corporations.

*W. S. Andrews,* for the appellant.

*Frank Hiscock,* for the respondent.

MERWIN, J.:

The defendant is a domestic corporation, duly organized under the laws of this State prior to 1887, and having its office and place of business at Syracuse, N. Y. · George F. Comstock, at the time of his death on September 27, 1892, and for many years prior thereto, was its treasurer and also one of its directors. In the complaint it is alleged that Comstock, at certain dates from June 6, 1892, to August 16, 1892, advanced moneys to the defendant to the amount of $5,076.75, no part of which has been paid, and for this amount, with interest, judgment was demanded. Upon the trial these advances were not disputed, but the controversy was over the counterclaim or set-off set up in the answer. It was alleged that on the 14th of November, 1887, the decedent became, and he or his estate is still indebted to the defendant upon account for money had and received in the sum of $5,729.31 and interest. In another count it was alleged that on the 14th of November, 1887, the decedent was the treasurer of the defendant, and on that day, as such treasurer, he received $10,500, the property of defendant, which it was his duty to apply to the payment of the then existing debts of the defendant, and deposit the balance, if any, in some safe and proper bank to his credit as such treasurer until needed by the defendant, but that instead of doing so he, without right or authority so to do, converted the same to his own use and loaned the same to the American Dairy Salt Company, a domestic corporation, which soon thereafter failed, whereby $5,275.46 of said money was lost; that at the time of such loan Comstock knew that the American Dairy Salt Company was insolvent, and it was soon thereafter so adjudged and a receiver appointed, and no part of its debts have been paid. In its decision the trial court found that on the 14th of November, 1887, Comstock, as treasurer of the defendant, " received $10,399.12 of the property of the defendant which it was his duty to deposit to the credit of the defendant in its proper bank account, but instead of so doing said Comstock, without right or authority so to do, converted to his own use and loaned the same to the said American Dairy Salt Company, Limited, whereby $3,275.46 of said money

was lost, which, with interest to this date, amounts to $4,303.94," and that at the time of such loan Comstock knew the said company was insolvent. The amount of $4,303.94, together with several small items not here in controversy, was deducted from the claim of the plaintiff, leaving a balance of $510.80 in favor of ' plaintiff, for which judgment was ordered.

The question on this appeal is whether the item of $3,275.46 and interest was properly deducted from plaintiff's claim. It is claimed on the part of the plaintiff (1) that there is no evidence in the case that would justify the finding that any money of the defendant was had and received by the decedent; (2) that in any event there is nothing in the case that tends to show that the $10,399.12 was used in an unauthorized manner by the decedent; (3) that even if the deposit or loan in question was made by the decedent and was unauthorized, no damage resulted to the defendant.

It appears that on the 14th of November, 1887, the Syracuse Savings Bank, in payment of a portion of a loan made by it to the defendant, made its check for the sum of $10,399.12 payable " to the order of George F. Comstock, Treas." This was indorsed by " Geo. F. Comstock, Treas.," then by " Geo. F. Comstock, Jr.," who was the president of the defendant, then by " Thomas Molloy, Treas." Molloy was treasurer of the American Dairy Salt Company, Limited. The check was then credited to the defendant on the books of the American Dairy Salt Company. On the books of the defendant under date of November 14, 1887, there is an entry of the loan from the savings bank, and of the deposit of the check for $10,399.12 with the American Dairy Salt Company. Thereafter from time to time, up to and including March 5, 1888, the defendant, as indicated by receipts in the name of the defendant by officers other than the treasurer, received in the aggregate from the American Dairy Salt Company the sum of $10,551.62. All these receipts are stated to be " on special account," and all are charged to the defendant on the books of the American Dairy Salt Company. Only a portion of the amounts of these receipts appear in the treasurer's account of the defendant, being the sum of $4,655.51, and the balance of $5,896.11 appear in the treasurer's account of the Western Coarse Salt Company, another corporation doing busi-

ness at Syracuse of which George F. Comstock was treasurer, and whose solvency is not here questioned. The arrangement under which these receipts or payments were divided does not appear. Afterwards, and on March 17, 1888, the defendant received credit on the books of the American Dairy Salt Company for the sum of $5,972, being a check of the Syracuse Savings Bank of that amount payable to the order of the Western Coarse Salt Company and indorsed by George F. Comstock, treasurer, and Thomas Molloy, treasurer. After this the American Dairy Salt Company continued to pay to the defendant, mostly on receipts similar to those above referred to, until October 9, 1888, at which time the total amount of such payments was $13,391.20, of which there appeared on defendant's books $5,760.78, and on the books of the Western Coarse Salt Company $7,630.42. The total credit to the defendant on the books of the American Dairy Salt Company, including an item of $65.13 of the same date as the original check and an item of $230.41 for interest, was the sum of $16,666.66. That left a balance of $3,275.46 due to the defendant, and this is the amount which the court below charges to the plaintiff. It seems that the Western Coarse Salt Company afterwards settled with the defendant for the balance it had received in the transaction over and above the amount of $5,972 paid March 17, 1888.

It is not shown that George F. Comstock personally ever had any of the moneys represented by the check of November 14, 1887. So that, according to the ordinary rule in such cases, an action for money had and received would not lie. (*Nat. Trust Co.* v. *Gleason,* 77 N. Y. 400; *Rosenberg* v. *Block,* 118 id. 334.) No conspiracy is charged or proved. If the defendant's only remedy is an action for damages for breach of trust or for negligence, it is to say the least quite doubtful whether it is in a position to have the benefit of it as a counterclaim in this action.

The fact of the deposit in question was entered on the books of the defendant. Evidently the three corporations had mutual transactions and their affairs seem to have been largely managed by the same individuals. Under what arrangement the deposit was made does not appear. It is shown that three out of five directors participated in it. It also appears that the books of the defendant show a settlement of the treasurer's account on February 15, 1892,

at which time there was a balance due from the treasurer of $151.64; that after that down to September 27, 1892, there were entries on both sides of the account, and that on February 20, 1893, the books show a balance due George F. Comstock, as treasurer, of $5,076.75, which is the amount the plaintiff sues for. Comstock died September 27, 1892. In view of the actual or presumptive knowledge which the defendant had of the transaction of November, 1887, and its apparent silence until after February, 1893, it is not clear that the defendant is in a position to say that the deposit of November, 1887, was without its authority.

But, passing these questions, we come to another claim of the plaintiff, which is, that the defendant was not damaged by the deposit of November, 1887. It is shown that on or prior to March 5, 1888, the full amount of it had been drawn by or paid to the defendant. At that date nothing was due from the American Dairy Salt Company to the defendant. The fact that by some arrangement a portion of the money had been passed over to the Western Coarse Salt Company did not change the state of the account between the defendant and the American Dairy Salt Company. The latter had safely kept and returned the whole of the money represented by the check of $10,399.12. Afterwards a further deposit is made with it of $5,972, and a portion of that is lost. This deposit is not challenged by the defendant's answer, and the arrangement or circumstances under which it was made are not put in issue by the allegations of the counterclaim. We see no answer to this view of the case, and as the case now stands it must, therefore, be held that the finding of the trial court that the check of November 14, 1887, was by George F. Comstock converted to his own use to the defendant's damage is not sustained by the evidence.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment reversed on the law and the facts and a new trial ordered, costs to abide the event.