[S. F. No. 6506.    Department Two.—June 2, 1915.]

JOHN J. LINEHAN, Appellant, v. JOHN DOE DEVIN-
CENSE, also Known as JOHN DOE DERENCHI,
Respondent.

ACTION TO QUIET TITLE—NEW TRIAL—VALIDITY OF EXECUTION OF CON-
TRACT OF SALE.—In an action to quiet title by the grantee under a
deed against one claiming under a contract of sale alleged to have
been made by the grantor of the deed, an order granting a new
trial on the theory that the contract is valid, will be set aside where
it appears that the contract as proved by the record, the original
being destroyed, was signed "A B owner by C D agent," contained

the clause "subject to the owner's approval" and the agent signed his name as witness to the signature of the owner after her death and between the time of its first and second recordations, that the name of the owner was wrongly spelled although she could write, and the authority of the agent was not shown, notwithstanding that the sister-in-law of defendant testified that she knew the owner in her lifetime, had seen her write, had seen her signature, and the original contract, and that the signature of the owner thereon was like her other signatures.

ID.—SPECIFIC PERFORMANCE—CONTRACT EXECUTED BY JOINT OWNER.— The order granting a new trial under such circumstances should be set aside where the contract of sale dealt with an entire tract of land of which the alleged maker of the contract of sale was only a part owner and such contract was for that reason not specifically enforceable.

ID.—LACHES.—The failure of defendant claiming under such contract to take steps to enforce his rights under it after being notified by the plaintiff, who claims under a deed from the alleged maker of the contract, that he would not convey the property in pursuance of the contract, constitutes laches which are a defense to the cross-complaint for specific performance based on the contract in an action to quiet title brought by the grantee under the deed years after such notification.

APPEAL from an order of the Superior Court of San Mateo County granting a new trial. Geo. H. Buck, Judge.

The facts are stated in the opinion of the court.

Mastick & Partridge, and Alan C. Van Fleet, for Appellant.

Sullivan & Sullivan and Theo J. Roche, for Respondent.

HENSHAW, J.—This is an appeal from the order of the court granting a new trial. The order is in the following language:

"In this action the motion for new trial herein having been heretofore submitted to the court for consideration and decision and now the court having considered the same renders its judgment as follows:

"In consequence of the failure of defendant's attorney to present the motion it has remained on the calendar. New trial granted November 25, 1912."

Seemingly from this order a new trial was granted for the laches of defendant's attorney in failing to present his motion. No neglect of any kind is imputed to plaintiff's attorney. It is difficult to understand why, for the reason given in the order itself, the motion should not have been denied rather than granted. It suggests an erroneous entry.

But passing this and coming to the merits of the appeal, the action itself was brought by plaintiff to quiet title to a piece of land in the county of San Mateo, which piece of land may for convenience be · described as the southwest quarter of lot 16. Both plaintiff and defendant claim title from a common source—Cecilia Brennan. Plaintiff's title was based upon a deed to him of the land by Cecilia Brennan, recorded in February, 1904. Defendant claims through an executory contract of sale, under which he had been admitted to possession of the land by Cecilia Brennan in 1903. This executory contract is in the following language:

"San Francisco, May 6, 1903.

"Received of Mr. Derenchi $50, being deposit on account of property in San Mateo the piece to be paid $700, the purchase price of the property this day sold to subject to the owner's approval, and being in the City of Colma, county of San Mateo, State of California, and described as follows: Lot 16, as known and designated on certain map marked map of the property at the Villa Homestead Association which said map is on file in the office of county recorder of the County of San Mateo, State of California, and recorded in said county.

"Term of sale 15 days are allowed to examine title and consummate the sale. At the termination of said time the balance of said purchase money is due and payable upon tender of the deed of the property sold if the title is defective, 60 days are allowed to perfect the same, and if, after the expiration of said term, unless extended by mutual consent, the title shall not have been perfected, the deposit is to be returned.

(Signed)     CECILIA BREMEN,
                        Owner.
          By L. C. Cull,
                        Agents."

It was first recorded precisely as above set forth on February 27, 1905, and then again upon December 22, 1905, was

once more recorded with the following added: "Witness to signature of Cecilia Bremen,

LAWRENCE C. CULL."

Defendant by answer set up his possession under this contract and by cross-complaint averred the performance by him of all things necessary to be done under the contract, made a tender of the amount due thereunder and demanded specific performance. To overcome the controlling effect of the deed recorded in 1904 over the executory contract first recorded in 1905, defendant alleged that plaintiff at the time that he took his conveyance knew of the existing contract. This plaintiff denied. The court's findings were wholly in favor of the plaintiff and judgment passed for him. The new trial was ordered under the circumstances above indicated.

Appellant argues with much force that this new trial could have been granted only upon the theory of a valid written contract between Cecilia Brennan and the defendant; that if such a contract did not exist defendant had no defense to this action, and as the existence of this contract depends upon the copy of it produced from the records (the original having been destroyed by fire) this court can and will consider the evidence touching this contract precisely as it would be considered by a trial court. (*Wilson* v. *Cross,* 33 Cal. 60; *Reynolds* v. *Snow,* 67 Cal. 497, [8 Pac. 27]; *Tuller* v. *Arnold,* 93 Cal. 166, [28 Pac. 863].) So construing this contract, appellant argues that upon its face it bears overwhelming and conclusive evidence that it was never executed by Cecilia Brennan, and that there is not a word of evidence that Cull, who signed his name as agent under that of Cecilia Bremen, was ever her duly authorized agent or attorney in fact to execute in her name and on her behalf the instrument in question. The evidence in this regard is certainly most potent and persuasive. The contract itself declares that the property is sold "subject to the owner's approval," a clause which, in the nature of things, would not be in a contract executed by the owner herself. The name of the owner was Cecilia Brennan. The contract is signed "Cecilia Bremen." Cecilia Brennan, it is disclosed, could write. It is not to be presumed that she would misspell her own name. Moreover, the contract as originally recorded declares, if language means anything, that the name of "Cecilia Bremen,

Owner,'' was written by L. C. Cull, agent. And finally the language, ''Witness to signature of Cecilia Bremen, Lawrence C. Cull,'' was unquestionably added to the instrument after its first recordation and after the death of Cecilia Brennan, who died within a year after the date of the execution of the original contract. The effort, therefore, to establish the execution of this contract by the belated declaration of Lawrence C. Cull that he signed as a witness to the signature of Cecilia Bremen is unavailing under all of the authorities. He did not sign as a subscribing witness and the second recordation of the instrument was without efficacy as tending to establish the execution of it by Cecilia Brennan herself. (*Hollenback* v. *Fleming,* 6 Hill. (N. Y.) 305; *Early* v. *St. Patrick's Church,* 81 Hun, 369, [30 N. Y. Supp. 981] ; *Pritchard* v. *Palmer,* 88 Hun, 412, [34 N. Y. Supp. 789] ; *In re Clute's Estate,* 37 Misc. Rep. 586, 75 N. Y. Supp. 1060].) Nor is this evidence at all overcome by the statement of Mrs. Ottoboni, sister-in-law of the defendant, that she knew Cecilia Brennan in her lifetime, had seen her signature, had seen the original of the contract, and that the signature to the original of the contract was like the other signatures of Cecilia Brennan.

Were there nothing further upon this appeal, the order granting a new trial would of necessity be reversed for the utter failure to show an existing contract between Cecilia Brennan and this defendant. But there are other considerations which remove any possible doubt upon the question if any could be said to exist. Thus the contract which Cecilia Brennan is said to have entered into was one for the conveyance of the whole tract of land. It is established and, indeed, admitted that she did not own it all, that part of it was owned by her sister, whose estate was in probate. As she could not have compelled specific performance of the contract, so specific performance may not be enforced against her or her successor in interest. (Civ. Code, sec. 3386; *Husheon* v. *Kelley,* 162 Cal. 656, 661, [124 Pac. 231].) We are not unmindful of the early case of *Marshall* v. *Caldwell,* 41 Cal. 613, and *Swain* v. *Burnett,* 76 Cal. 301, which latter relies upon the first cited case for its authority. But the force of these cases as authority is entirely destroyed by the more recent decisions of *Jackson* v. *Torrance,* 83 Cal. 521, [18 Pac. 394] ; and *Olsen* v. *Lovell,* 91 Cal. 508, [27 Pac.

765]. In the earlier of these cases last mentioned the husband and wife jointly agreed to sell a piece of property which they owned in undivided interests. The wife refused to acknowledge the contract and thus it became nonenforcible against her. Plaintiff sought to compel a conveyance by the husband of his undivided interest and it was held that equity would not decree such a conveyance. In the later case of *Olsen* v. *Lovell,* the vendee contracted to purchase a tract of land owned by the vendors as cotenants. The contract was signed by one of the vendors. The name of the other was signed without authority. The court refused a specific performance to the vendee of the interest of the vendor who had formally executed the contract, and in its decision pointed out that the foundation of the determination in *Jackson* v. *Torrance* was not that equity refused specific performance because the parties defendant were husband and wife, but because to compel a part performance by the husband would be to make him "perform a contract which he never made or intended to make," and the same equitable principle was applied in *Olsen* v. *Lovell.*

And finally it may be said that the uncontradicted evidence shows that defendant, after notification from plaintiff that the latter would not deed the property to the former in pursuance of the terms of the asserted contract with Cecilia Brennan, took no steps to enforce his right under that contract, and meets this action to quiet title by a crosscomplaint seeking specific performance years after plaintiff's repudiation of the contract was made known to him. Under the authority of *O'Donnell* v. *Jackson,* 69 Cal. 622, [11 Pac. 251], this unexplained laches precluded any rights which defendant might otherwise have had to a specific performance of the contract.

The order granting a new trial is therefore reversed.

Lorigan, J., and Melvin, J., concurred.